UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LEE D. WILLIAMS,

Plaintiff

v. C-1-04-328

DEPUTY WARDEN WILLIAMS, *et al.*,

Defendants

ORDER

This matter is before the Court upon the Report and Recommendation of the United States Magistrate Judge (doc. no.59) and plaintiff's objections (doc. no. 62). The Magistrate Judge concluded that plaintiff failed to show his claims rise to the level of a constitutional violation and therefore recommended that defendant's Motion for Summary Judgment be granted.

Plaintiff objects to the Judge's Report and Recommendation on the grounds that his findings are contrary to law.

## REPORT AND RECOMMENDATION

Plaintiff, an inmate at the Ohio State Penitentiary and former inmate at the Lebanon Correctional Institution (LeCI), brings this prisoner civil rights action under 42 U.S.C. § 1983. The remaining defendant in this action is James McWeeney, M.D., the LeCI Medical Director at the relevant time. Plaintiff alleges that defendant was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. This matter is before the Court on defendant's motion for summary judgment (Doc. 45), and plaintiff's memoranda in opposition thereto. (Docs. 52, 57).

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party must demonstrate the absence of genuine disputes over facts which, under the substantive law governing the issue, could affect the outcome of the action. *Celotex Corp.*, 477 U.S. at 323.

In response to a properly supported summary judgment motion, the non-moving party "is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. The trial court need not search the entire record for material issues of fact, *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a prima facie case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff's verified complaint (Doc. 2)[1] alleges the following facts. At the end of February 2003, while plaintiff was an LeCI inmate, he suffered from back pain and states "the doctor had 2 no shows." (Doc. 2 at 1). In March 2003, plaintiff's back went out and he signed up for emergency sick call. Plaintiff was told he would see the doctor but "[i]t never happened" and he "sat in pain for weeks." *Id.* On May 27, 2003, while he was in isolation, plaintiff signed up for sick call because of back pain and spasms. However, he never saw the doctor. On June 2, 2003, plaintiff's back gave out while he was showering. He was in severe pain and was taken to the infirmary in a wheelchair. The nurse advised him she was unable to prescribe medication without the doctor's approval and had no idea when plaintiff could see the doctor. Plaintiff was then taken back to his cell. *Id.* Plaintiff alleges that Dr. McWeeney allowed "inmates [to] stay in pain for weeks," had no set schedule, and would call the infirmary the day he planned to show up. *Id.* On June

---

[1] Plaintiff's verified complaint has the same force and effect as an affidavit for purposes of responding to a motion for summary judgment under Fed. R. Civ. P. 56(e). *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

30, 2003, plaintiff filed the instant lawsuit alleging that Dr. McWeeney's actions amount to cruel and unusual punishment under the Eighth Amendment.

In support of his motion for summary judgment, defendant presents the following evidence. On July 5, 2002, plaintiff was transferred from the Mansfield Correctional Institution (ManCI) to LeCI. The transfer sheet noted plaintiff had chronic back pain. (Doc. 45, Ex. B). On July 17, 2002, he was seen by defendant McWeeney. The progress note indicated that plaintiff had a history of back problems. Defendant prescribed medication and checked his reflexes. (Doc. 45, Ex. D). On August 18, 2002, plaintiff wanted one of the prescriptions cancelled. *Id.* On August 26, 2002, a little more than a month later, he was seen in the segregation area by a nurse. Plaintiff complained of lower back pain and it was observed that he had guarded movement. A doctor's appointment was made and defendant Dr. McWeeney saw plaintiff the following day. (Doc. 45, Ex. E). Dr. McWeeney noted that plaintiff claimed he had a pinched nerve in his lower back with pain radiating to his leg and that plaintiff had previously been prescribed medication which had been discontinued. Defendant McWeeney made a note to order an EMG. *Id.* The consult was ordered and shows that he had an October appointment, which was rescheduled for December 4, 2002. (Doc. 45, Ex. F).

On November 26, 2002, plaintiff came to nurses sick call requesting medication for lower back pain. He was told that he would be given a doctor's appointment and that an EMG had been scheduled. (Doc. 45, Ex. G). On December 4, 2002, plaintiff went to the Corrections Medical Center (CMC) for the EMG. (Doc. 45, Ex. H). The doctor's report suggested possible central disc herniation. The next day, plaintiff again saw Dr. McWeeney, who interpreted the EMG for him. There were no new findings when he was examined by Dr. McWeeney on this date. Dr. McWeeney's note states, "We will set up some L/S spine films. A trial of Elavil at night. Ibuprofen during the day. I have told him that this is likely not a surgical condition and an MRI is not indicated." (Doc. 45, Ex. G).

The medical record indicates that the plaintiff was seen in the infirmary January 9 and 14, 2003, March 7, 2003, and on April 2, 3, 5 and 17, 2003 for other medical needs. (Doc. 45, Ex. I). The medical record contains no note that plaintiff requested nurses sick call regarding back pain during this time. On June 2 and 3, 2003, plaintiff complained about back pain and indicated he hurt his back in military service prior to prison life. (Doc. 45, Ex. I). On June 6, 2003, he was again seen by Dr. McWeeney. Plaintiff indicated that he was having some increased back pain and was currently taking no medications. (Doc. 45, Ex. J). Plaintiff's examination was "fairly unremarkable," with negative straight leg raising bilaterally, brisk and symmetric reflexes, and a normal neurologic exam. *Id.* Dr. McWeeney assessed mild radicular pain and renewed two medications that plaintiff

had previously been using. On June 23, 2003, plaintiff was transferred from LeCI to the Southern Ohio Correctional Facility. (Doc. 45, Ex. A).

After incarceration, only the "unnecessary and wanton" infliction of pain constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Wilson v. Seizer*, 501 U.S. 294, 298 (1991), quoting *Whitley v. Albert*, 475 U.S. 312, 319 (1986). Unnecessary and wanton infliction of pain includes those conditions that are "totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

In order to establish a claim for relief under 42 U.S.C. § 1983 for a denial of medical care, a plaintiff must present evidence showing "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner who is allowed to suffer needlessly through a denial of medical care when relief is available has a cause of action under the Eighth Amendment against an individual whose deliberate indifference caused the suffering. *Id*; *Byrd v. Wilson*, 701 F.2d 592, 594 (6th Cir. 1983); *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir. 1976). Such a claim has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson*, 501 U.S. at 297-300.

The objective component requires that the deprivation alleged be "sufficiently serious." *Farmer v. Brennan*, 511 U.S. at 834, quoting *Wilson*, 501 U.S. at 298. "[O]nly those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seizer*, 501 U.S. 294, 298 (1991), citing *Rhodes*, 452 U.S. at 347. *See also Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994).

Under the subjective component, plaintiff must establish that defendant acted with deliberate indifference to his serious medical needs, *Estelle*, 429 U.S. at 106; *see also Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-303, which requires evidence that defendant ignored a known risk of harm. *Farmer,* 511 U.S. at 837, 842. A prison official may be held liable for denying an inmate humane conditions of confinement only if he knows that an inmate faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. Prison officials must exhibit more than lack of due care for a prisoner's health or safety before an Eighth Amendment violation will be found. *Id.* at 835. *See also Whitley*, 475 U.S. at 319. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. It is not enough that the official "should" have perceived a significant risk, but did not. *Id.* Moreover, liability will not be found where a prison official

actually knew of a substantial risk of harm to an inmate if he responded reasonably to the risk, even if the harm ultimately was not averted. *Farmer*, 511 U.S. at 844. Applying these standards to the instant case, the Court concludes that plaintiff fails to establish his Eighth Amendment claim.

It is undisputed that plaintiff's back condition pre-dated his incarceration at LeCI. Plaintiff received consistent and appropriate treatment for his back condition, including pain medication and an EMG, during the six months prior to February 2003 when plaintiff first claims "the doctor had 2 no shows." Plaintiff's condition was not sufficiently serious for surgical intervention and conservative measures were taken to treat his condition. The gist of plaintiff's instant complaint is that treatment for his back condition was delayed on four occasions in February, March, May and June of 2003. As best the Court can discern from plaintiff's evidence, such delays ranged from four days in June 2003 to "weeks."

Plaintiff has failed to meet the objective component of the Eighth Amendment in this case. The objective component of the Eighth Amendment requires that the inmate show the deprivation is sufficiently serious. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). The focus of the objective component is whether there was a sufficiently serious deprivation, as opposed to merely inquiring whether an inmate suffered a serious medical condition. *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001); *Miller v. Michigan Department of Corrections Health Care Providers*, 986 F. Supp. 1078 (W.D. Mich.

1997). *See also Blackburn v. Kalamazoo*, 390 F.3d 890 (6th Cir. 2004). When an inmate alleges a delay in treatment, the objective component of the Eighth Amendment is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899. *See, e.g., Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (completely severed tendons is a condition that almost any lay person would realize to be serious). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742. For example, in *Miller*, although an inmate had a serious medical condition, incontinence of bowel and bladder, the delay in supplying Attends undergarments over a three-day period was not a serious deprivation of a serious medical need because there were no serious adverse effects resulting from the delay. 986 F. Supp. at 1080-81.

Assuming for purposes of the motion for summary judgment that plaintiff's back condition was a serious medical need, any alleged delays in meeting that medical need did not present a substantial risk of serious harm to plaintiff. *See Maldonado-Zapon v. Unknown Crompton*, 2005 WL 2333507, *1 (W.D. Mich. 2005) (inability to see a physician over approximately two and one-half months for back pain did not rise to level of a substantial risk of serious harm). *Cf. Estate of Carter v. City of Detroit*, 408 F.3d 305 (6th Cir. 2005) (police officer knew prisoner was

complaining of chest pains and shortness of breath, was told that she had not had her heart medicine, and prisoner died of heart attack); *Garretson v. City of Madison Heights*, 407 F.3d 789 (6th Cir. 2005) (prisoner told booking officers that she was an insulin-dependent diabetic, and she had to be hospitalized the next day after not receiving her insulin in jail); *Blackmore*, 390 F.3d 890 (delay in treatment of obvious medical emergency posed a substantial risk of serious harm to prisoner with "classic signs" of appendicitis). Unlike cases where the seriousness of the injury or illness is obvious to even a lay person, here the seriousness of the delays in treating plaintiff's back pain cannot be discerned without competent medical proof. *Blackmore*, 390 F.3d at 899. Plaintiff fails to present verifying medical evidence establishing any deterioration of his back condition attributable to the short periods of time he waited for treatment. There is simply no medical evidence showing that plaintiff's condition was somehow exacerbated by any short delay in treatment on the four occasions cited by plaintiff or that such delays were attributable to Dr. McWeeney. In fact, the most recent evidence from June 2003 indicated plaintiff's radicular pain was "mild" and that the findings on examination were "fairly unremarkable." These facts do not support a claim of deliberate indifference.

In addition, plaintiff's evidence and medical records demonstrate no subjective awareness on defendant's part of any needs demanding immediate attention. There is no evidence suggesting that defendant McWeeney at any time deliberately ignored the plaintiff's medical needs with the intent to inflict pain or prolong any suffering. In fact, the records demonstrate that defendant McWeeney prescribed appropriate treatment for plaintiff's back condition from the time he entered Lecl in July 2002 until his transfer to SOCF in June 2003. Where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake*, 537 F.2d at 860 n. 5.

On summary judgment, plaintiff is required to present verifiable medical evidence of harm resulting from the delay in receiving treatment for his back pain and that such harm was attributable to defendant McWeeney. Plaintiff has failed to do so in this case. Therefore, plaintiff has failed to show his claims rise to the level of a constitutional violation. For the foregoing reasons, defendant's motion for summary judgment should be granted.

## CONCLUSION

Upon a *de novo* review of the record, especially in light of plaintiff's objections, the Court finds that plaintiff's objections have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant specific responses by this Court. The Court finds that the Magistrate Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge.

Accordingly, the Court hereby ADOPTS the Report and Recommendation of the United States Magistrate Judge (doc. no. 62). Defendant's Motion for Summary Judgment (doc. no. 45) is GRANTED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of the Court's Order would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

IT IS SO ORDERED.

Herman J. Weber, Senior Judge
United States District Court

J:\DOCUMENT\PRISONER\04-328R&R on MSJ.wpd
March 30, 2006 (11:15am)